The Chief Justice’s
Dissent.
My opinion is, that there is not sufficient ground, in ^'*s case' ^01' presuming payment of the' debt.
First. The representatives of the mortgagor have not f'Meged, °r intimated, that the debt had ever been paid; but, as to them, the bill has been taken for confessed.
Second. Hunt, who holds as a subsequent purchaser, for one thousand dollars only, does not allege, that the debt had ever been paid; but only relies on the lapse of time as, in his judgment, sufficient to repel the mortga- gee’s right to a foreclosure.
Third. Either the non-residence of the mortgagee, or ... ,. , . — . * . the insolvency at the mortgagor, is sufficient, in my *473 opinion, to repel the presumption arising from the trfefe lapse of time ; and I think, that both the non-residence and insolvency haye been satisfactorily alleged, and established. The allegations of the bill cannot', I think, be fairly or consistently understood otherwise, than as importing, that the mortgagor had no means of payment, except the land which was mortgaged-; and the prOof abundantly shews, that he was insolvent, and continued to.be hopelessly so to his death, in 1813.
The non-residence of the mortgagee is plainly alleged in the bill, and the allegations obviously imply, that he was not in this state when the debt became due, and has never been here since': moreover, the bond and the mortgage both describe him as a citizen ©f New Jersey; and ! think that" the mortgagor, and all others claiming under him, are estopped, so far as not to be -allowed to deny, or require proof of, the fact so recited in the bond and in the mortgage. Without -any proof, or even intimation, to that effect, /cannot presume that the mortgagee remained from home, and in this state, for one yeai‘ after the execution of the mortgage ; and feel bound; therefore, to presume, .that he has not been in Kentucky ■since the debt became due, which was one year after the date of the mortgage.
The statutes, placing non-residents on the .footing of residents as to the limitation of actions, do not, in my opinion, destroy the efficacy of' non-residence in repelling, asa fact, the presumption, arising from lapse of time merely, that a debt has been paid. The reason why continued non-residence may repel the presumption of payment, is, because it shews the improbability of payment.
Nor can T admit, that the collateral security destroys the repeilant efficacy of the mortgagor’s insolvency.
The insolvency of the obligor may rebut the presumption of payment. Moreland vs. Bennet, 1 Strange, 652; Rex vs. Stephens, 1 Barrow, 431; 1 Coventry's Powel, 391, note 1;—and it was evidently the opinion of Coventry, that the fact, that the obligee had a collateral security by mortgage, will not destroy the rebutting efficacy *474 of the obligor’s insolvency. See notes to the first volume of Coventry's Powel, from 391 to 399 inclusive.
And is not this doctrine reasonable, consistent, and just ? In a suit on a bond, which had been due for twenty years without any intermediate payment of interest, or any demand or acknowledgment, would a jury, after proof of the obligor’s insolvency during the whole time, decide, that the debt- had been paid, merely because the obligee held a mortgage, which he had never enforced, and which afforded him ultimate security, not only for the principal debt, but for its accruing interest ? No case, as I confidently believe, can be found to sanction any such notion. The most rational inference that such a security would authorize, is, that the mortgagee had either taken the thing mortgaged in full discharge of his debt, or that, feeling sure of ultimate payment, he.had preferred to let his money, thus secured, lie as a productive fund, yielding an annual increment- of six per "cent, per annum.
The legal, as well as rational, inference from the obligor’s insolvency, is, that he could not have paid the debt without selling the' mortgaged property, or his equity of redemption therein. And in this case, there •is no pretence for presuming that, by any such sale, the debt was paid ; because, the mortgagor’s interest had been sold, in the year 1810, for only thirty three dollars, and he died utterly insolvent in 1813.
The existence of the collateral security, therefore tends, in my judgment, to impair, rather than to fortify, the presumption of payment. Had there been personal, instead of real security, surely an acknowledgment by the surety, that he had never paid the debt, ought to be sufficient to repel any presumption that it had been paidy when it is proved that the principal obligor was never able to pay it.
Here it is evident, that the land never paid the debt; and therefore 1 cannot presume, that the insolvent debt- or paid it; more especially when there is not only no such allegation, but an admission by his representatives that he never did pay it.
*475 it is my opinion, therefore, that the decree of the circuit court ought to be affirmed.
On the facts of this case, a suit at law on the bond, could not, I think, be barred by mere lapse of time; and, consequently, as the creditor is entitled to payment, I am unwilling to take from him his only means of obtaining payment, that is, a decree declaring that, unless the debt be paid, the equity of redemption shall be barred and foreclosed.